1

2                                O

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  GUADALUPE GARCIA, | )   Case No.  EDCV 10-0306-DTB |
| 12             Plaintiff, | )   ORDER AFFIRMING DECISION OF |
| 13        vs. | )   COMMISSIONER |
| 14  MICHAEL J. ASTRUE, | ) |
|     Commissioner of Social Security, | ) |
| 15 | ) |
| 16            Defendant. | ) |

17

18      Plaintiff filed a Complaint on March 9, 2010, seeking review of the

19  Commissioner's denial of her application for Disability Insurance Benefits and

20  Supplemental Security Income under Titles II and XVI of the Social Security Act.

21  In accordance with the Magistrate Judge's Case Management Order, the parties filed

22  a Joint Stipulation ("Jt. Stip.") on November 16, 2010.  Thus, this matter now is ready

23  for decision.[1]

24  _____

25      [1]     As the Court advised the parties in its Case Management Order, the

26  decision in this case is being made on the basis of the pleadings, the Administrative

27  Record ("AR"), and the Joint Stipulation filed by the parties.  In accordance with

28  Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which

                                                (continued...)

**DISPUTED ISSUES**

1.     Whether the Administrative Law Judge ("ALJ") properly considered the State agency physician's mental residual functional capacity ("RFC")  assessment. (Jt. Stip. 2.)

2.     Whether the ALJ properly considered the treating psychiatrist's Initial Psychiatric Assessment.  (Jt. Stip. 8-9.)

3.     Whether the ALJ properly assessed plaintiff's RFC.  (Jt. Stip. 2.)

4.     Whether the ALJ posed a complete hypothetical question to the vocational expert ("VE").  (Jt. Stip. 2-3.)

**DISCUSSION**

**I.     Reversal is not warranted based on the ALJ's alleged failure to properly consider the medical evidence.**

Plaintiff asserts that the ALJ failed to properly consider the opinions of State agency consultant Nasra S. Haroun, M.D. and examining psychiatrist Dr. Chun C. Lai.[2]  (Jt. Stip. 3, 8.)

In evaluating medical opinions, the Ninth Circuit distinguishes among three types of physicians: (1) Treating physicians (who examine and treat), (2) examining physicians (who examine but do not treat), and (3) non-examining physicians (who neither examine or treat).  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).  In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an

_____

[1](...continued)
party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

[2]     Plaintiff contends that Dr. Lai was a treating psychiatrist. (Jt. Stip. 8-9.) The Court concludes that Dr. Lai is properly characterized as an examining psychiatrist.  However, for purposes of considering the weight of his opinion, the difference in status is immaterial.

examining physician than to a non-examining physician. Id. When a treating or examining physician's opinion is not contradicted by another physician, it may only be rejected for "clear and convincing" reasons. Id. Where contradicted, a treating or examining physician's opinion may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. Id. at 830-31; see also Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008).

A.    Dr. Haroun

On February 8, 2008, State agency consultant Dr. Haroun completed a "Psychiatric Review Technique," "Mental Residual Functional Capacity Assessment," and Medical Evaluation/Case Analysis, in which he opined that plaintiff had mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning and maintaining concentration, persistence and pace, and did not have any episodes of decompensation. (AR 253-69.) Among other things, Dr. Haroun concluded that plaintiff suffered from an affective disorder and substance addiction disorder. (AR 253.) Dr. Haroun further concluded that based on the evidence in the file, plaintiff would have difficulty sustaining even simple tasks, but that her drug and alcohol abuse appeared to be material to this evaluation. (AR 268.) Dr. Haroun noted that "when [plaintiff] first started her court mandated treatment[, which was required by the court for plaintiff to obtain custody of her child that was removed from her care,] and was testing negative for drugs[,] she was reporting improvement in her symptoms and there [was] no evidence of any bizarre behavior or any of the type of behavior or problems with attention and concentration noted at the [consultative examination]. (Id.) Overall, Dr. Haroun determined that without the drug and alcohol abuse, plaintiff would be able to perform at least simple repetitive tasks in a non-public environment. (Id.)

Contrary to plaintiff's allegations, the ALJ considered Dr. Haroun's findings and the ALJ's RFC assessment was consistent with these findings. There is no

1  evidence in the record suggesting that the ALJ disregarded Dr. Haroun's findings

2  without any consideration.  Indeed, plaintiff fails to consider that the ALJ implicitly

3  adopted Dr. Haroun's rating of functional limitations in his assessment of plaintiff's

4  mental impairments.  The ALJ found "[i]n activities of daily living, the claimant has

5  mild restriction.  In social functioning, the claimant has moderate difficulties.  As for

6  episodes of decompensation, the claimant has experienced no episodes of

7  decompensation, which had been of extended duration." (AR 12.)  The ALJ's RFC

8  assessment limiting plaintiff to light, entry level work with no production quotas,

9  "such as those imposed by conveyor belt or piece work" (Id.), appears consistent with

10  Dr. Haroun's finding that plaintiff could perform at least simple repetitive tasks in a

11  non-public environment (AR 268).

12      Further, in assessing plaintiff's credibility, a finding that plaintiff does not

13  challenge in this action, the ALJ noted that the clinical treatment and examining notes

14  in the record "showed [plaintiff] doing well with medication" and plaintiff's

15  "allegation of hearing voices is contrary to her admission that her mood is stable

16  when she is compliant with medication." (AR 13.)  These findings are supported by

17  Dr. Haroun's conclusions.  For instance, Dr. Haroun opined that there was evidence

18  that plaintiff reported feeling better and having improvement in her symptoms during

19  the same time period as her psychiatric treatment and negative drug screens.  (AR

20  268.)  Dr. Haroun further noted that plaintiff did not exhibit any bizarre behavior or

21  problems with either attention or concentration during this same time period.  (Id.)

22  Dr. Haroun also opined that there was "evidence that [plaintiff] is not entirely

23  credible as she appeared to be exaggerating her psychotic symptoms at the

24  [consultative examination]" and there was no objective evidence to suggest that

25  plaintiff was experiencing auditory hallucinations.  (Id.)

26      Accordingly, under the circumstances, the Court concludes reversal for further

27  consideration of Dr. Haroun's opinion is not warranted.

28  / / /

4

1           B.    Dr. Lai

2           Plaintiff also contends that the ALJ failed to properly consider Dr. Lai's

3 findings or provide specific and legitimate reasons for disregarding his opinion and

4 Global Assessment of Functioning ("GAF")[3] assessment.  (Jt. Stip. 8-9.)

5           In interpreting the evidence and developing the record, the ALJ need not

6 discuss every piece of evidence; rather, the ALJ need only discuss evidence that is

7 significant and probative.  Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012

8 (9th Cir. 2005) (holding that the ALJ "did not selectively analyze the evidence"

9 where the ALJ referred to a combination of medical reports without specifically

10 discussing a report of low probative value upon which the ALJ did not rely); Vincent

11 v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam).  Further, the Ninth

12 Circuit has held that "[t]he ALJ need not accept the opinion of any physician,

13 including a treating physician, if that opinion is brief, conclusory, and inadequately

14 supported by clinical findings."  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.

15 2002).

16          Here, rather than discussing Dr. Lai's conclusory initial assessment and GAF

17 score, the ALJ discussed examining psychiatrist Dr. Kent Jordan's more recent and

18 well reasoned findings and conclusions as well as plaintiff's treating physician's

19 findings.  Dr. Lai's initial findings were inconsistent with the record as a whole, and

20 thus, the ALJ properly accorded Dr. Lai's treatment records less consideration.  As

21 such, to the extent the ALJ failed to expressly discuss Dr. Lai's opinion, such error

22 was harmless.  See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir.

23 2006); see also Carmickle, 533 F.3d at 1162.

24

25        [3]    A GAF score is the clinician's judgment of the individual's overall level

26 of functioning.  It is rated with respect to psychological, social, and occupational

27 functioning, without regard to impairments in functioning due to physical or

28 environmental limitations.  See American Psychiatric Association, Diagnostic and

Statistical Manual of Mental Disorders ("DSM-IV") at 32 (4th ed. 2000).

The form at issue is an "Initial Psychiatric Assessment" conducted by Dr. Lai on October 16, 2007.[4] (AR 217-21.) At the time of plaintiff's initial visit with Dr. Lai, she was diagnosed with a mood disorder, not otherwise specified, polysubstance dependence, and a personality disorder, not otherwise specified. (AR 217.) At that time, Dr. Lai assessed plaintiff as having a GAF score of 38, which indicates some impairments in reality testing or communication or major impairments in several areas, such as work or school, family relations, judgment, thinking or mood. (Id.) See also DSM-IV at 34. Dr. Lai's assessment was void of any detail and merely consisted of fill-in-the-box entries and short phrases. (See AR 217-221.) Plaintiff failed to attend her next scheduled appointment with Dr. Lai on January 3, 2008, and all of her subsequent medication follow-up appointments at the Department of Health were with Dr. Roberto Paras Cabugao, Jr. (AR 198, 297.) The medical evidence reflects that Dr. Cabugao thereafter remained plaintiff's treating psychiatrist at the Department of Mental Health, and treated her regularly from January 24, 2008, until at least July 1, 2009. (AR 278-315.)

Unlike the initial assessment conducted by Dr. Lai, Dr. Cabugao's findings reflected that, after receiving psychiatric treatment and medication, plaintiff's symptoms improved. For instance, Dr. Cabugao opined, *inter alia*, that plaintiff exhibited normal motor activity, responsive interactions, an alert level of consciousness, good concentration, a euthymic mood, normal thought processes, and a mood congruent though content. (AR 289.) He further noted that plaintiff had no

---

[4] Although Dr. Lai's name appears as the treating physician on the Adult Intake Assessment form dated September 25, 2007, the signature line reflects the name of plaintiff's licensed clinical social worker, Carol Guy. (AR 238, 246). Furthermore, the handwriting on this assessment is the same as that of other medical evidence signed by Ms. Guy. (See, e.g., AR 215, 227, 230.) Likewise, Dr. Lai's name appears on a progress note from November 20, 2007, but, again, the signature at the bottom of the page differs from that of Dr. Lai's signature. (Compare AR 203 with AR 220.)

1   delusions or hallucinations, good insight and judgment, and good impulse control.

2   (Id.)  Finally, Dr. Cabugao assigned plaintiff a GAF score of 65.[5] (AR 286.)

3         The ALJ expressly considered Dr. Cabugao's findings in his decision. (AR 12-

4   13.)   For example, in support of his finding that plaintiff was "doing well with

5   medication" over her course of treatment, the ALJ specifically cited to Dr. Cabugao's

6   treatment records of March 11, 2008, April 9, 2008, June 4, 2008, July 9, 2008,

7   November 3, 2008, April 6, 2009 and July 1, 2009.  (AR 12, 279, 282, 285, 292-93,

8   295, 315.)  These records reflect a positive improvement in plaintiff's symptoms over

9   the course of plaintiff's treatment.  (Compare AR 297 [plaintiff exhibited signs of

10  depression and anxiousness, experienced auditory hallucinations and had poor

11  medication adherence] with AR 279 [plaintiff "takes walks every day and is proud,"

12  "mood is stable," "doing well," all categories in the Mental Status Exam marked

13  "appropriate," and "good" medication response and adherence], AR 282 [plaintiff's

14  "mood is stable," no hallucinations, "appropriate" mood, affect, attention and

15  concentration and "good" medication response and adherence],  AR 285 [plaintiff

16  "doing well" and "more animated," no depression nor hallucinations, and "good"

17  medication response and adherence], AR 286-90 [Psychiatric Re-Assessment showed

18  plaintiff's symptoms markedly improved since initial psychiatric assessment], AR 291

19  [plaintiff's affect "calm; upbeat," mood not depressed, no hallucinations, and had

20  "good" medication response and adherence], AR 293 [plaintiff "denies" auditory

21  hallucinations and had "good" medication response and adherence], and AR 295

22  [plaintiff's hallucinations "gone" and plaintiff had "good" medication adherence].

23        The ALJ also properly considered the opinion of examining psychiatrist Dr.

24  Jordan  over  that  of  Dr. Lai.  Dr. Jordan  conducted  a  "Complete  Psychiatric

25

26  ────────────────

27        [5]     A GAF score between 61 and 70 reflects some mild symptoms or some

28  difficulty in social, occupational, or school functioning, but generally functioning
    pretty well, and has some meaningful interpersonal relationships.  See DSM-IV at 34.

7

Evaluation" in January, 2008 at the request of the Department of Social Services. (AR 247-52.)  After examining plaintiff, Dr. Jordan concluded that plaintiff suffered from polysubstance abuse (alcohol and amphetamines), amphetamine-induced psychotic disorder with hallucinations and paranoia, polysubstance-induced cognitive impairments and mood disorder with highly labile, irritable and tearful affect, and personality disorder with manipulative trends.  (AR 251.)  He assessed plaintiff with a GAF score of 60, which indicated moderate symptoms or moderate difficulty in social, occupational, or school functioning.  (Id.)  See also DSM-IV at 34.  In his decision, the ALJ expressly discussed Dr. Jordan's findings and noted that his findings were consistent with "the totality of the record including clinical treatment notes from the [Department of Mental Health]."  (AR 11-12.)

Based on a review of the record, the Court concludes that any failure to specifically discuss Dr. Lai's findings was harmless and remand is not warranted on this basis.

**II.   Reversal is not warranted based on the ALJ's alleged failure to properly assess plaintiff's RFC and pose a complete hypothetical to the VE.**

Plaintiff further contends that the ALJ erred in his assessment of plaintiff's RFC because the ALJ did not properly consider the opinions of Drs. Haroun and Lai. (Jt. Stip. 11-12.)  Plaintiff further contends that, had the ALJ specifically included their findings in the hypothetical question posed to the VE, "it is likely the VE would not have testified that plaintiff is capable of performing the jobs she identified." (AR 4.)  The Court disagrees.

/ / /

/ / /

/ / /

/ / /

/ / /

8

Social Security Ruling ("SSR")[6] 96–8p, 1996 WL 374184, at *1, defines a claimant's RFC as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular basis." See also Smolen v. Chater, 80 F.3d 1273, 1291 (9th Cir. 1996) ("A claimant's 'residual functional capacity' is what a claimant can still do despite her limitations."). Further, "[i]n determining residual functional capacity, the ALJ must consider subjective symptoms such as fatigue and pain." Smolen, 80 F.3d at 1291; 20 C.F.R. §§ 404.1545(a), 416.945(a) (RFC is "the most [one] can still do despite [one's] limitations" and represents an assessment "based on all the relevant evidence in [one's] case record.").

The ALJ properly found that plaintiff had the RFC to do other work. As discussed above, the ALJ concluded that plaintiff had the RFC to "perform light work as defined in 20 C.F.R. [§] 416.97(b) except that she is limited to entry level work with no production quotas such as those imposed by conveyor belt of piece work." (AR 12.) The ALJ based this finding on numerous factors and provided ample explanation in support of his RFC assessment. For example, the ALJ explicitly referenced the reports of the "treating and examining practitioners" from the Department of Mental Health and the "findings made on examination" by Dr. Jordan in support for plaintiff's RFC assessment. (AR 13.) The ALJ also considered Dr. Jordan's assessment of plaintiff's current level of functioning as mild to moderate with a GAF score of 60, and that plaintiff "lived alone in an apartment . . . managed

---

[6]     "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

1   her own money, traveled by public transportation, and did her own shopping, food

2   preparation and chores." **(**AR 12, 249, 251.)  The ALJ noted that Dr. Jordan opined

3   that plaintiff exhibited various signs and symptoms of very recent, if not ongoing,

4   substance abuse at the time of the examination. (AR 12, 247, 251.)  The ALJ further

5   noted that Dr. Jordan opined that "[plaintiff] appeared to highly embellish her

6   symptomology, adding that she was unreliable regarding her present illness, work

7   history and the degree of her recent substance abuse."  (AR 12, 248.)

8        As discussed, the ALJ also relied upon the longitudinal treatment records from

9   the Department of Mental Heath indicating that regular and consistent psychiatric

10  treatment and medication resulted in an improvement in plaintiff's symptoms. (AR

11  12.)   Further, in explaining his RFC findings, the ALJ noted that plaintiff's

12  impairments "could reasonably be expected to cause the alleged symptoms," however

13  he ultimately concluded that plaintiff's statements "concerning the intensity,

14  persistence, and limiting effects of these symptoms are not credible to the extent they

15  are inconsistent with the above residual functional capacity assessment." (AR 13.)

16  The ALJ stated that "the record fails to document any objective clinical findings

17  establishing that [plaintiff] was not able to perform light entry level work during the

18  period since September 1, 2007.  There is no opinion by a treating physician that

19  claimant has been unable to sustain this level of activity where she is compliant with

20  prescribed treatment and medication.  In sum, the above residual functional capacity

21  assessment is supported by the totality of the record." (Id.)

22       Given these considerations, it appears that, in making the RFC assessment, the

23  ALJ considered many factors, including plaintiff's daily activities, and the totality of

24  the medical and opinion evidence.  Where evidence is susceptible to more than one

25  rational interpretation, the ALJ may resolve the conflict. See Vasquez v. Astrue, 572

26  F.3d 586, 591 (9th Cir. 2009) (as amended); see also Morgan v. Comm'r of the Soc.

27  Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1998) ("[W]hen evidence is susceptible to

28  more than one rational interpretation, the ALJ's conclusion must be upheld.")  The

10

1  ALJ's RFC assessment is supported by substantial evidence. Accordingly, remand is
2  not warranted on this issue.

3        Likewise, plaintiff's contention that the ALJ failed to consider all aspects of
4  Dr. Haroun's and Dr. Lai's opinions in eliciting testimony from the VE does not merit
5  reversal. (Jt. Stip. 14.)  In posing a hypothetical question to the VE, the ALJ is
6  required to include limitations that he found credible and supported by substantial
7  evidence. Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005); Osenbrock
8  v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001); Rollins v. Massanari, 261 F.3d 853,
9  857 (9th Cir. 2001). Plaintiff does not object to any of the limitations included in the
10 hypothetical, but instead argues that they were incomplete because they did not
11 specifically mention the "moderate mental limitations opined by Dr. Haroun . . . [and]
12 the GAF scores of 38 and 40 opined by Dr. Lai . . ." (Jt. Stip. 14.)  However, as
13 discussed, *supra,* the ALJ considered Dr. Haroun's opinion and any error in failing
14 to consider Dr. Lai's opinion was harmless.  The ALJ's RFC assessment properly
15 incorporated those limitations that he found credible and supported by substantial
16 evidence. The ALJ's hypothetical posed to the VE included the same limitations as
17 contained in the RFC assessment.  (Compare AR 12 with AR 60-61.)  The ALJ's
18 hypothetical questions to the VE relied on his complete impairment determinations
19 and therefore, new VE testimony is unnecessary. See Osenbrock, 240 F.3d at 1163;
20 see also Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995) (as amended) (upholding
21 the ALJ's hypothetical question to a VE that excluded alleged limitations properly
22 rejected by the ALJ).

23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

**ORDER**

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this action with prejudice.

DATED: August 15, 2011

_____
DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE

12